[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-12655

_____

HECTOR HERNANDEZ,
on his own behalf and on behalf of those similarly situated,

Plaintiff-Appellee,

*versus*

PLASTIPAK PACKAGING, INC.,
a Foreign Profit Corporation,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:17-cv-02826-JSM-SPF

_____

Before LUCK and BRASHER,* Circuit Judges.

LUCK, Circuit Judge:

Under the Fair Labor Standards Act, employers must pay non-exempt employees for their overtime hours "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). In *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572 (1942), the Supreme Court examined how to apply this statutory requirement to employees who work "irregular hours for a fixed weekly wage." *Id.* at 573. The answer is today known as the fluctuating workweek method. Where an employee has a "fixed salary" and works fluctuating hours, her employer need only pay for her overtime hours at a rate of "one-half" of her "regular rate of pay." *See* 29 C.F.R. § 778.114(a) (2016).

The issue in this case is whether Plastipak Packaging, Inc. paying Hector Hernandez bonuses—a shift premium for night work and holiday pay—on top of his fixed salary precludes the use of the fluctuating workweek method. After reviewing the Act, the Supreme Court's decision in *Missel*, and the Department of Labor's regulatory guidance, we hold that it does not. So long as an employee receives a fixed salary covering every hour worked in a week, the payment of a bonus on top of the employee's fixed salary does not bar an employer's use of the fluctuating workweek

---

* This opinion is being entered by a quorum pursuant to 28 U.S.C. § 46(d).

method to calculate overtime pay.  Because the district court erred in concluding otherwise, we reverse the district court's summary judgment for Hernandez and remand for further proceedings consistent with this opinion.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### *The fluctuating workweek method*

Before we talk about how Plastipak paid Hernandez, it's helpful to first explain how the fluctuating workweek method works.  Under the Act, an employer must pay non-exempt employees for overtime hours "at a rate not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207(a)(1).  Take, for example, an hourly worker who earns ten dollars an hour.  This employee would be entitled to overtime pay of fifteen dollars for each hour worked over forty hours—"one and one-half" times her regular rate.  This method of calculating overtime pay is known as "time and one-half."  *See Davis v. City of Hollywood*, 120 F.3d 1178, 1179 (11th Cir. 1997).

But some workers receive a fixed salary, rather than an hourly wage, and work fluctuating hours each week.  For workers with a fixed salary and variable weekly hours, the employer can use the fluctuating workweek method to determine overtime pay.  Under this approach, the employer calculates the employee's regular rate by "dividing [the] weekly salary by the number of hours actually worked" that week.  *Lamonica v. Safe Hurricane Shutters, Inc.*,

711 F.3d 1299, 1311 (11th Cir. 2013).  When using this method, an employer need only pay for overtime hours at a rate of one-half times the employee's regular rate—not at one and one-half times. That's because the employee "has already been compensated at the straight time regular rate" for those hours "under the salary arrangement." *Id.* (citation omitted); *see also Condo v. Sysco Corp.*, 1 F.3d 599, 605 (7th Cir. 1993) ("The fixed salary compensates the employee [working variable hours] for all his hours, the overtime ones included.  He therefore receives 100% of his regular rate for each hour that he worked.  As such, he is entitled only to an additional fifty percent of his regular rate for the hours that he worked in excess of forty." (emphasis omitted)).

Here's an example of how the fluctuating workweek method works.  Take an employee with a fixed weekly salary of $1,000 who works variable hours.  In a week where she works fifty hours, her regular rate would be $20 an hour ($1,000 divided by fifty hours) and she would be entitled to overtime pay for ten hours (every hour worked over the fortieth hour).  Under the fluctuating workweek method, this employee would be entitled to $100 as overtime pay for her ten hours of overtime (one-half of her regular rate multiplied by ten).  Although this employee's overtime pay is lower compared to an employee whose overtime pay is calculated using the time and one-half method, the tradeoff is she still earns her full $1,000 fixed salary even in weeks where she works less than forty hours.

*Hernandez's regular and overtime compensation*

Plastipak is a plastic packaging company with manufacturing facilities across the country.  Hernandez worked for Plastipak from March 14, 2011, until May 15, 2016.  He worked in the Plant City, Florida facility as a process technician and later as a maintenance technician.

Hernandez was a salaried "non-exempt" employee, meaning that he was covered by the overtime provisions of the Act. Plastipak paid Hernandez a fixed biweekly salary of $1,964.99, but the number of hours he worked varied each week.  Sometimes he worked forty hours or more.  Sometimes he worked less than that. Either way, Plastipak paid him his full fixed salary regardless of the total hours that he worked in a week.

Plastipak also paid Hernandez an overtime premium whenever he worked more than forty hours in a workweek.  Plastipak used the "fluctuating workweek" method to calculate Hernandez's overtime pay.  Hernandez signed a form when he was hired acknowledging that Plastipak would use this method to determine his overtime pay.

Plastipak used a more generous version of the fluctuating workweek method to determine Hernandez's overtime pay.  It calculated his regular rate for a given week by dividing his weekly salary by forty hours (rather than by the total number of hours he worked that week).  Plastipak then multiplied Hernandez's regular rate by the number of overtime hours he worked that week (rather than multiplying half of his regular rate by his overtime hours).

Here's Plastipak's formula in action.  Take a week where Hernandez worked fifty hours.  His weekly fixed salary was $982.50 (half of his biweekly salary of $1,965).  Under the fluctuating work-week method, Hernandez's regular rate for this week would be $19.65 an hour ($982.50 divided by fifty hours), and he would receive $98.25 in overtime pay (one-half his regular rate multiplied by ten overtime hours).  But under Plastipak's approach to over-time, Hernandez's regular rate for this week would be $24.56 an hour ($982.50 divided by forty hours) and he would receive $245.60 in overtime pay (his regular rate multiplied by ten overtime hours).

There were two final parts to Hernandez's compensation. First, Plastipak paid him a "shift premium" of $30 when he worked the night shift for a week. If Hernandez worked less than a full week on the night shift, the shift premium was prorated based on the number of night hours he had worked. In other words, Plasti-pak paid him an additional $0.75 for each night hour.   In weeks where Hernandez worked night hours and worked over forty hours, Plastipak paid him an extra $0.75 for each night hour worked over forty hours.

Plastipak also gave Hernandez "holiday pay."  If Hernandez did not work on a holiday, he was credited as if he had worked eight hours that day. If he did work on a holiday, he was credited as having worked an additional eight hours beyond the actual time he worked that day.  To receive these credited hours, Hernandez was required to work the scheduled workdays before and after the holiday.

### The district court proceedings

Hernandez sued Plastipak in 2017, bringing a single claim under the Act for recovery of overtime pay.[1]  Hernandez alleged that Plastipak violated the Act by failing to pay time and one-half compensation for his overtime hours.

Both parties moved for summary judgment.  Plastipak argued that it properly used the fluctuating workweek method to calculate Hernandez's overtime pay because he received a fixed biweekly salary and his hours "fluctuated from week to week."  The additional compensation from the night shift premium and holiday pay didn't bar the use of this method, Plastipak argued, because Hernandez's "base salary" remained fixed each week.  Plastipak also argued there was a "clear mutual understanding" that the fluctuating workweek method would apply to Hernandez's overtime payments, as shown by the acknowledgment Hernandez had signed.

Hernandez responded that Plastipak was precluded from using the fluctuating workweek method because he didn't receive fixed "straight time pay."  His weekly compensation varied depending on the number and type of hours he worked, Hernandez argued, because of the shift premium he received when he worked night hours and because of his holiday pay.  Hernandez argued that

---

[1] Hernandez sued Plastipak on his own behalf and on behalf of those similarly situated.  The district court denied Hernandez's motion to conditionally certify a collective action and the case proceeded on an individual basis.

he was entitled to summary judgment because Plastipak didn't pay him time and one-half of his regular rate for his overtime hours, and because there was no clear mutual understanding between the parties that the fluctuating workweek method would apply to his overtime payments.

The district court granted summary judgment for Hernandez. The district court said that an employer had to satisfy four requirements to use the fluctuating workweek method: (1) "the employee's hours fluctuate from week to week"; (2) "the employee receives a fixed salary that does not vary with the number of hours worked" in a week; (3) "the fixed salary at least equals the minimum wage"; and (4) "the employer and employee share a 'clear mutual understanding' that the employer will pay the fixed salary" regardless of the number of hours the employee works in a week. The district court analyzed only the second factor—whether Hernandez received a "fixed salary"—because it was "dispositive."

Hernandez's "straight time pay was not fixed," the district court concluded, because it varied as a result of the "additional pay" that he received on top of "his base weekly salary." The district court ruled that Hernandez's bonuses for night shifts and holidays "offend[ed]" the method's requirement of a "fixed weekly salary." The district court reasoned that a salary isn't fixed just because the "base salary" doesn't fluctuate; rather, "the addition" of "bonuses" to an employee's "base pay," the district court concluded, "renders the [fluctuating workweek method] inapplicable." Because the district court determined that the absence of a fixed salary was

dispositive, it didn't address whether there was a clear mutual understanding between Plastipak and Hernandez about the use of the fluctuating workweek method to calculate his overtime pay.

The district court entered a $1,870.52 judgment for Hernandez, the amount of his unpaid overtime wages within the statute of limitations. Plastipak appeals from the district court's summary judgment.

## II.      STANDARD OF REVIEW

We review de novo the district court's summary judgment, viewing the evidence and all reasonable inferences in favor of the nonmoving party. *McKenny v. United States*, 973 F.3d 1291, 1296 (11th Cir. 2018). A district court should grant summary judgment only if there's "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.      DISCUSSION

The district court granted summary judgment for Hernandez because paying an employee extra "bonuses and premiums" "offend[s]" the fluctuating workweek method's "requirement of a 'fixed weekly salary.'" In other words, the district court concluded that the "addition of shift differentials or bonuses" to an employee's salary renders the fluctuating workweek method "inapplicable." Hernandez similarly argues that he didn't have a fixed salary because "Plastipak         provided         [him]"         with         "additional

compensation"—his night shift premium and holiday pay—on top of his salary.  We disagree.  The applicable Supreme Court precedent and the department's regulatory guidance show that providing an employee with additional compensation, like production bonuses or holiday pay, on top of his fixed salary is not inconsistent with the fluctuating workweek method.  Plastipak's payment of additional bonuses on top of Hernandez's fixed salary did not make his fixed salary any less fixed.

We begin with the relevant statutory text.  The Act, enacted in 1938, requires employers to pay employees for their overtime hours—hours worked in excess of forty hours a week—"at a rate not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207(a)(1).  An employer who fails to do so is liable for the employee's "unpaid overtime compensation."  *Id.* § 216(b).  Thus, so long as each hour of overtime work was worth to Hernandez "not less" than one and one-half times the value of a normal hour of work in a week, Plastipak's overtime payments complied with the Act.

But the Act is silent as to the application of its overtime provisions to salaried employees, let alone salaried employees who work fluctuating hours.  In 1938—the same year of the Act—the department took its first stab at addressing this silence and issued an interpretive bulletin explaining how to calculate overtime pay for people like Hernandez:  employees who work "an irregular or fluctuating number of hours" in a week for a "fixed basic salary."  *Maximum Hours and Overtime Pay*, 1942 Wage & Hour Man. 113

(1942).[2]  This bulletin provided that employees who receive a "fixed basic salary," regardless of the number of hours worked in a week, are entitled for overtime pay "to a sum, *in addition to the basic salary*, equal to one-half the regular rate of pay multiplied by the number of hours which he works in excess of [forty] in the week." *Id.* (emphasis in original).  Critically, this bulletin explained that, where a salaried employee does not work a "regular number of hours," the "fluctuating workweek" method calculates the employee's regular rate by taking "the weekly wage (*including production bonuses*, if any)" and averaging it "over the total hours worked each workweek." *Id.* at 105 (emphasis added).  In the same year that the Act was passed, the department said that bonuses were compatible with the fluctuating workweek method.

In *Missel*, the Supreme Court addressed the application of the Act to the situation contemplated by the department's 1938 bulletin:  an employee who "work[ed] irregular hours for a fixed weekly wage." 316 U.S. at 573.  Although "[n]either the wage, the hour[,] nor the overtime provisions" of the Act spoke of "any other method of paying wages except by hourly rate," the Court had "no doubt that pay by the week, to be reduced by some method of computation to hourly rates"—in other words, salaried work—"was also covered by" the Act. *Id.* at 579.  For an employee who earns "a fixed weekly wage" for "regular contract hours," *id.* at 580,

---

[2] The 1938 bulletin was reprinted in the department's 1942 Wage and Hour manual.

calculating her regular rate is simple—"[w]age divided by hours equals regular rate," *id.* at 580 n.16.  The "same method of computation" applies, the Court explained, for an employee who earns "a weekly wage" for "variable or fluctuating hours."  *Id.* at 580.  In that case, the employee's regular rate is calculated by dividing the weekly salary by the number of hours the employee actually worked that week.  *See id.*  Although the employee's regular rate varies based on the number of hours worked in a week, "it is regular in the statutory sense inasmuch as the rate per hour does not vary for the entire week."  *Id.*

In applying the Act's overtime provisions to an employee working irregular hours for a fixed wage, the *Missel* Court said its reading of the Act was the same as the department's 1938 interpretive bulletin.  *Id.* at 580 n.17 (explaining that its interpretation of the Act "has been the [department's] interpretation of the Act").  In other words, the Supreme Court adopted the department's 1938 bulletin—agency guidance providing that, when calculating the regular rate for a salaried employee working fluctuating hours, employers should take "the weekly wage (including production bonuses, if any)" and average it "over the total hours worked each workweek[.]"  *Maximum Hours and Overtime Pay*, 1942 Wage & Hour Man. 105 (1942).

Then, in 1968, the department issued 29 C.F.R. section 778.114(a).  This regulation adopted *Missel* and gave further guidance as to the fluctuating workweek method.  Like the situation addressed by *Missel*, this regulation addresses employees who earn

a "[f]ixed salary for fluctuating hours."  29 C.F.R. § 778.114(a)
(2016).[3]  Not a fixed "total compensation package"—a "fixed sal-
ary."  "Salary," in turn, means "fixed compensation"—not total
compensation—"paid regularly (as by the year, quarter, month, or
week) for services."  *Salary*, Webster's Third New Int'l Dictionary
(unabridged ed. 1966).  And "fixed" means "not subject to change
or fluctuation."  *Fixed*, Webster's Third New Int'l Dictionary (un-
abridged ed. 1966).

Section 778.114 covers workers employed on a salary basis
who have hours "which fluctuate from week to week," so long as
the salary is paid "pursuant to an understanding with his employer
that he will receive such fixed amount as straight time pay for

---

[3] In 2019, the department proposed a rule meant to "clarify that bonus pay-
ments, premium payments, and other additional pay are consistent with" the
fluctuating workweek method.  *See* Fluctuating Workweek Method of Com-
puting Overtime, 84 Fed. Reg. 59590, 59591 (2019).  In 2020, the department
adopted the proposed changes to section 778.114(a).  *See* Fluctuating Work-
week Method of Computing Overtime, 85 Fed. Reg. 34970 (2020).  Section
778.114(a) now provides that "bonuses, premium payments, commissions,
hazard pay, or other additional pay of any kind" on top of a fixed salary are
compatible with the method.  29 C.F.R. § 778.114(a) (2020).  But the "Supreme
Court has held that administrative rules generally are not applied retroac-
tively."  *Hargress v. Soc. Sec. Admin, Comm'r*, 883 F.3d 1302, 1308 (11th Cir.
2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroac-
tivity is not favored in the law . . . and administrative rules will not be con-
strued to have retroactive effect unless their language requires this result.").
Because Hernandez worked for Plastipak from 2011 to 2016, the 2020 amend-
ment to section 778.114(a) has no bearing on this case.

whatever hours he is called upon to work in a workweek, whether few or many." 29 C.F.R. § 778.114(a) (2016). Consistent with *Missel*, the regulation provides that for these employees,

> [w]here there is a clear mutual understanding . . . that the fixed salary is compensation . . . for the hours worked each workweek, whatever their number, . . . such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.

*Id.* Section 778.114 doesn't say that an employer using the fluctuating workweek method cannot give an employee additional compensation on top of the fixed weekly salary. But it does say that "[w]here all the legal prerequisites for use of the 'fluctuating workweek' method of overtime payment are present, the Act, in requiring that 'not less than' the prescribed premium of [fifty] percent for overtime hours worked be paid, does not prohibit paying more." *Id.* § 778.114(c).

Hernandez's argument is based on the premise that every single payment (other than his overtime payments) Plastipak paid him was a part of his "salary," and thus, his salary fluctuated and was not "fixed." But this isn't right. Section 778.114 requires an

employee to receive a "fixed salary," and it also requires that she receive "extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay." *Id.* § 778.114(a). The compensation an employee receives is not the same as the fixed salary; the salary is a subset of the employee's compensation. Elsewhere, the department's regulations discuss "[b]onus payments"—"payments made in addition to the regular earnings of an employee," *id.* § 778.208 (2016)—and explain when and how to factor in an employee's bonuses when "computing [her] regular hourly rate of pay and overtime compensation," *id.* 778.209(a) (2016). Thus, an employee's salary isn't tantamount to her total "earnings." The fixed salary represents the unchanging compensation that an employee is paid regularly (biweekly, in this case) for services. It doesn't include "bonus payments," which are irregular payments "made in addition to" the employee's "regular earnings."

When we interpret statutory language, we must "give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quotation omitted). "When Congress uses different language in similar sections, we should give those words different meanings." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1089 (11th Cir. 2017) (en banc) (citation and quotation marks omitted). So too with regulations. The department tells us that an employee's "fixed salary," "compensation," and "bonuses" are different things, so we should give them different meanings. The central premise underlying

Hernandez's argument—that all payments to an employee other than overtime payments get lumped into the fixed salary—has no basis in the regulation's text.

Here, Hernandez was "employed on a salary basis" and received a "fixed salary" as "compensation" for "the hours worked each workweek, whatever their number." *Id.* § 778.114(a). Plastipak paid Hernandez a fixed biweekly salary of $1,964.99 "as straight time pay for whatever hours he [was] called upon to work in a workweek, whether few or many." *Id.* Hernandez's hours fluctuated but his salary didn't; he received his full fixed salary regardless of whether he worked five hours in a workweek or fifty. This salary arrangement was "sufficient to provide compensation to" Hernandez "at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks[.]" *Id.* And Plastipak paid Hernandez "extra compensation, in addition to [his fixed] salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay." *Id.* In fact, Plastipak paid Hernandez significantly more than one-half his regular rate of pay for his overtime hours, as we showed above, but the Act didn't prohibit Plastipak from "paying more." *Id.* § 778.114(c). Nothing in the plain language of the regulation removed Hernandez from its scope just because Plastipak occasionally paid him more for night shift work and holidays on top of his fixed salary.

There is one other piece of helpful agency guidance. In 1999, the department issued an opinion letter explaining that section 778.114 doesn't prohibit an employer from using the

fluctuating workweek method simply because the employee also receives "additional payments" for holidays and vacation days. *See* U.S. Dep't Labor, Wage & Hour Div., Op. Ltr. FLSA, 1999 WL 1002399, at *2 (May 10, 1999). "Where all the legal prerequisites for the use of the fluctuating workweek method of overtime payment are present," the department explained, the Act, "in requiring that 'not less than' the prescribed premium of [fifty] percent for overtime hours worked be paid, does not prohibit paying more." *Id.* This agency guidance shows that an employee receiving extra compensation, like holiday or vacation pay, doesn't offend section 778.114's requirement of a "fixed salary" as a prerequisite for applying the fluctuating workweek method.

Consistent with *Missel* and this regulatory guidance, the First Circuit has held that section 778.114 allows for the payment of bonuses on top of a fixed salary. *Lalli v. Gen. Nutrition Ctrs., Inc.*, 814 F.3d 1, 4 (1st Cir. 2016). The employee in *Lalli*, who worked at a store selling health and wellness products, "earned a guaranteed weekly salary regardless of the hours worked that week and a non-discretionary sales commission that varied based upon the amount of eligible sales attributed to him for that week." *Id.* at 2. Whenever the employee worked over forty hours in a week, his employer used the fluctuating workweek method to calculate his overtime premium. *Id.* In other words, "Lalli was paid a fixed salary for whatever hours he worked, and Lalli's earned commissions were added to his regular rate calculation." *Id.* at 4–5. The employee argued that because he also received sales commissions,

which "varied from week to week," he didn't have a fixed salary as required by section 778.114. *Id.* at 2.

The First Circuit disagreed, holding that the payment of a bonus in addition to the fixed salary "does not foreclose the application of section 778.114 with respect to the salary portion of the pay structure at issue." *Id.* at 4. Because the employee received the required one-half overtime premium on top of his regular rate for his overtime hours, this "compensation arrangement "pass[ed] muster" under "the plain language of" section 778.114. *Id.* at 5. The *Lalli* Court rejected the same argument that Hernandez makes here: "that *any* additional form of compensation that must be factored into an employee's regular rate removes the pay scheme as a whole from the purview of section 778.114[.]" *Id.* at 6. This argument was "unpersuasive," the First Circuit said, because "[s]ection 778.114, by its plain language, requires a fixed salary for hours worked, not a fixed total amount of compensation for the week." *Id.*

We reach the same conclusion and hold that paying an employee a bonus, on top of the fixed weekly salary, doesn't preclude an employer from using the fluctuating workweek method to calculate the employee's overtime pay. We agree with the First Circuit that to read section 778.114 to categorically prohibit additional compensation on top of the fixed salary would amount to rewriting the regulation; but we "cannot, and should not, ignore the plain language of the regulation[.]" *See id.* at 7. So, we won't.

Our holding is consistent with *Missel*, which ratified the department's 1938 bulletin—which, in turn, said that the fluctuating workweek applies even where an employee receives a bonus on top of a fixed salary. *Maximum Hours and Overtime Pay*, 1942 Wage & Hour Man. 105 (1942). It is consistent with the plain text of section 778.114, which requires a "fixed salary" as compensation "for the hours worked each workweek, whatever their number," rather than a fixed total amount of compensation for the workweek. 29 C.F.R. § 778.114(a) (2016). And our holding is consistent with the department's 1999 opinion letter, which explained that paying employees with a fixed salary "additional payments" "beyond their regular salary" for holidays and vacations is allowed under the regulation. *See* U.S. Dep't Labor, Wage & Hour Div., Op. Ltr. FLSA, 1999 WL 1002399, at *2 (May 10, 1999).

Hernandez offers three reasons why his night shift premium and holiday pay prohibited Plastipak from using the fluctuating workweek method. None are persuasive.

First, Hernandez argues that we must liberally construe the Act in favor of employees to the fullest extent of its remedial measures. But this argument "relies on the flawed premise" that the Act "pursues its remedial purpose at all costs." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (cleaned up). The Supreme Court clarified in *Encino Motorcars* that courts "have no license to give" exemptions to the Act "anything but a fair reading." *Id.* Although the fluctuating workweek method is not an exemption to the Act, *see Thomas v. Bed Bath & Beyond, Inc.*,

961 F.3d 598, 607 (2d Cir. 2020) (stating that the method is "an *application of* and not an exception to" section 207), the *Encino Motorcars* Court explained that "exemptions are as much a part of the [Act's] purpose as the overtime-pay requirement," 138 S. Ct. at 1142. We must do what we always do where there is no "textual indication" to give a statute a narrow or a broad reading; we must give the text of the Act "a fair reading." *Id.* at 1142–43.

In any event, Hernandez does not explain how a liberal rather than a fair interpretation of the Act has any bearing on the issues in this case. *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 366 (2012) (explaining that the "liberal construction" canon only has "an identifiable meaning if it means . . . nothing more than a rejection of 'strict construction' and insistence on fair meaning."). We do not see, and Hernandez does not tell us, how a liberal rather than a fair reading of the Act could swing the analysis in his favor.

Second, Hernandez argues that we should rely on the department's guidance in 2011, which prohibited employers from using the fluctuating workweek method as to employees who earned bonuses on top of their salary. But this agency guidance didn't modify the text of section 778.114. In 2008, the department issued a notice of proposed rulemaking, seeking to update section 778.114 and clarify that bonuses were compatible with the fluctuating workweek method. *See* Updating Regulations Issued Under the FLSA, 73 Fed. Reg. 43654, 43655 (2008). In a 2011 final rule notice, however, the department changed its mind, declined to adopt the

proposed changes to section 778.114(a), and left the regulation intact.  *See* Updating Regulations Issued Under the FLSA, 76 Fed. Reg. 18832, 18850 (2011) ("[T]he final rule has been modified from the proposal to restore the current rule").  Thus, the 2011 final rule notice didn't modify section 778.114(a)'s unambiguous text or otherwise substantively change the regulation.  This final rule notice doesn't resolve the issue before us; the plain and undisturbed text of the regulation does.

And third, at oral argument Hernandez said for the first time that, even if the fluctuating workweek method allows an employer to pay bonuses, we should draw a distinction between bonuses related to hours and bonuses related to performance.  Hernandez maintained that "the distinguishing characteristic" in the department's 1938 bulletin and 1999 opinion letter—which approved of "production bonuses" and "additional payments" for holidays and vacations—is that "in both scenarios neither of the bonuses were tied to hours worked or types of hours worked in the workweek at issue."  In other words, Hernandez alternatively argues that bonuses on top of a fixed weekly salary are compatible with the fluctuating workweek method, provided that the "additional money is not tied to the type of hour worked."

Hernandez's new argument comes too late.  We do not consider arguments raised for the first time at oral argument.  *See Holland v. Gee*, 677 F.3d 1047, 1066 (11th Cir. 2012) (declining to consider a party's "last-minute attempt to raise" an "alternative argument" because "we do not consider arguments . . . 'made for the

first time at oral argument.'" (citation omitted)); *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1269 (11th Cir. 2007) (explaining that we do not consider arguments "made for the first time at oral argument").

Regardless, we reject Hernandez's proposed line between bonuses for performance like commissions (acceptable) and bonuses for hours worked like shift premiums (unacceptable). Nothing in section 778.114 bars either or distinguishes between the two. Rather, the regulation requires that the employee receive a "fixed salary" as compensation for "whatever hours he is called upon to work in a workweek, whether few or many," and overtime pay "for all overtime hours worked at a rate not less than one-half his regular rate of pay." 29 C.F.R. § 778.114(a) (2016). It doesn't prohibit the employee from receiving additional compensation on top of the fixed salary. And once we accept that additional payments on top of the fixed salary are consistent with section 778.114 (a premise that Hernandez's alternative argument accepts), that's the ballgame. Whether an employee receives bonuses for performance or for the type of hours worked, neither form of additional pay offends section 778.114—provided that the employee receives a "fixed salary" covering every hour, whether few or many, in the workweek.

Hernandez's proposed line between performance bonuses and shift premiums is outright refuted by the department's guidance. The 1999 opinion letter allowed an employer, paying its employees a "fixed salary for fluctuating hours under 29 CFR [section]

778.114," to give them "additional payments" "beyond their regular salary" for holidays and vacation days. U.S. Dep't Labor, Wage & Hour Div., Op. Ltr. FLSA, 1999 WL 1002399, at *2 (May 10, 1999). A bonus payment for a holiday is not a performance bonus. It's a bonus related to the type of hour worked. That the department approved of this type of extra pay undercuts Hernandez's claim that section 778.114 prohibits bonuses tied to the specific hours an employee works.

The First and Fifth Circuits have made the same distinction between performance and hour bonuses that Hernandez relies on. *See Lalli*, 814 F.3d at 5–7 (holding that additional pay for shift differentials is not compatible with the fluctuating workweek method, but additional pay for sales commissions is because the employee's salary "remains fixed regardless of the number or type of hours worked"); *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 926 (5th Cir. 2018) ("Time-based bonuses, unlike performance-based commissions, run afoul of the [fluctuating workweek] regulations because they make weekly pay dependent on the type of hours worked."). But, as we've explained, this distinction has no support in section 778.114. The regulation does not say that some bonuses are good while others are bad. It does not distinguish between bonuses for hours and bonuses for performance. It just requires that the employee receive a "fixed salary [as] compensation for the hours worked each workweek, whatever their number[.]" 29 C.F.R. § 778.114(a) (2016). That's what Hernandez received. His salary was fixed, even if Plastipak sometimes paid him more on top

of his fixed salary.  Thus, Plastipak was allowed to apply the fluctu-
ating workweek method to calculate Hernandez's overtime pay.

## IV.    CONCLUSION

The district court erred in concluding that the fluctuating
workweek method couldn't apply to Hernandez because of his
night shift premium and holiday pay.  We reverse the summary
judgment for Hernandez and remand for the district court to con-
sider, consistent with this opinion, whether Hernandez's overtime
pay was lawful under the Act, *Missel*, and section 778.114.  We note
that the district court didn't address any other requirements for the
fluctuating workweek method, including whether there was a clear
mutual understanding between Plastipak and Hernandez that this
method applied to his overtime pay, or whether Plastipak correctly
applied the method to calculate Hernandez's overtime pay.  We
leave it to the district court to address these questions on remand.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith                                                                For rules and forms visit
Clerk of Court                                                                www.ca11.uscourts.gov

October 13, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-12655-JJ
Case Style:  Hector Hernandez v. Plastipak Packaging, Inc.
District Court Docket No:  8:17-cv-02826-JSM-SPF

**This Court requires all counsel to file documents electronically using the Electronic Case
Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties
are permitted to use the ECF system by registering for an account at www.pacer.gov.
Information and training materials related to electronic filing, are available at
www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal.
Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a
later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for
filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is
timely only if received in the clerk's office within the time specified in the rules. Costs are
governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for
attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested
Persons a complete list of all persons and entities listed on all certificates previously filed by
any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be
reheard must be included in any petition for rehearing or petition for rehearing en banc. See
11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation for time spent on the appeal no later than 60 days after either issuance of mandate
or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via
the eVoucher system. Please contact the CJA Team at (404) 335-6167 or
cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher
system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellee.

Please use the most recent version of the Bill of Costs form available on the court's website at
www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number
referenced in the signature block below. For all other questions, please call Tiffany A. Tucker,
JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs